UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARI HAYS,

                Plaintiff,                No. 13-cv-11478

vs.                                        Hon. Gerald E. Rosen

SPIRIT AIRLINES, INC., a foreign
corporation, GREGORY MANNY, in his
corporate and individual capacities, BRIAN
DAVIS, in his corporate and individual
capacities, MICHAEL ANDERSON, in his
corporate and individual capacities, TONY
LEFEVBRE, in his corporate and individual
capacities, and KIM ARCHAMBEAU, in her
corporate and individual capacities,

                Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANT SPIRIT AIRLINES'
FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS AND DISMISSING
PLAINTIFF'S COMPLAINT, IN ITS ENTIRETY**

**I. INTRODUCTION**

Plaintiff Cari Hays commenced this wrongful discharge/retaliation action against her former employer, Spirit Airlines, and several Spirit Airlines supervisory employees[1] in Wayne County Circuit Court. In her two-count Complaint, Plaintiff alleges that in terminating her employment, Defendants violated Michigan public policy and the Michigan Elliott-Larsen Civil Rights Act. Spirit Airlines timely removed the action to this court on diversity grounds and, and thereafter moved to dismiss Plaintiff's Complaint

---

1 None of the individual defendants have been served with process and the time for doing so has expired.

1

pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. Plaintiff filed a response to Defendant's motion and Defendant has replied.

Having reviewed and considered the parties' briefs and the entire record of this action, the Court has determined that oral argument would not aid in the decisional process. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), the Court will decide this matter "on the briefs." This Opinion and Order sets forth the Court's ruling.

## II. **PERTINENT FACTS**

Plaintiff Cari Hays is a former employee of Spirit Airlines, Inc. ("Spirit") who worked in Spirit's Detroit Metropolitan Airport operations department. Ms. Hays began her employment with Spirit in 1999 as a part-time employee. Shortly thereafter, she was promoted to a full-time position. She was subsequently promoted several times to the positions of Lead Agent, Supervisor, and Customer Service Manager. In 2008, she was promoted to the position of General Manager of Airport Operations.

Plaintiff claims that at the beginning of 2010, she became concerned with "staffing shortages" at Spirit's Metro Detroit operations, which she claims "caused flight delays" and "resulted in numerous safety issues and violations of state and/or federal laws." [*See* Complaint, ¶¶ 19-20.] According to Plaintiff, when she reported her concerns to her immediate supervisors, Defendants Gregory Manny and Brian Davis, they acknowledged that Spirit's Metro Detroit operations were understaffed. *Id.* at ¶ 22. She further claims that Manny and Davis acknowledged that the understaffing of Spirit's Metro Detroit

operations was causing unsafe flight and working conditions. *Id.* at ¶ 23. Plaintiff states that she "repeatedly requested from Defendants that they provide her with the necessary staffing so that she could run the Metro Detroit operations in a safe manner and in compliance with state and federal laws," *id.* at ¶ 25, but Spirit failed to provide her with the requested staffing. *Id.* at ¶ 26. Plaintiff alleges that thereafter she continued to object and refused to be complicit in what she believed to be Spirit's unlawful directives to manage the operations in violation of the law. *Id*. at ¶ 27.

In June 2010, Plaintiff was issued what she calls a "bogus" performance write-up, after which she continued to voice her objections and maintained her repeated requests to Defendants that they provide her with the necessary staffing so that she could run Spirit's Metro Detroit operations in a safe manner. *Id.* at ¶ 29. Plaintiff further alleges that around November 2010, Defendant Michael Anderson, the airline's Director of Safety, became aware of staffing shortages and unsafe/unlawful working conditions through communications with Plaintiff and Spirit pilots, but Anderson also failed to take any action. *Id.* at ¶¶ 33-34.

Plaintiff further alleges that in July 2010, she complained to Kim Archambeau, Spirit's Director of Inflight Services, about "safety issues and violations of law," as well as her concerns about unfair and allegedly unlawful "favoritism" that existed due to personal relationships between members of Spirit Senior Management and other Spirit employees. *Id.* at ¶ 46. At the time she reported her concerns to Archambeau, Ms. Hays

3

also believed that Defendant Archambeau herself was involved in a personal relationship with Defendant Tony Lefevbre, Spirit's Vice President of Customer Service. *Id.* at ¶ 47.

Ms. Hays's employment with Spirit Airlines was terminated on November 23, 2010. Hays claims that she was terminated in retaliation for her objections to perceived safety violations and for refusing to follow the directives of her supervisors that she believed to be in violation of the law. She also asserts that she was retaliated against, in part, for opposing violations of the Elliott-Larsen Civil Rights Act.

### III. **MOTION TO DISMISS STANDARD**

Defendant seeks dismissal of Plaintiff's entire complaint pursuant to Fed. R. Civ. P. 12(b)(6) contending that Plaintiff's claim for wrongful discharge is expressly preempted by the Airline Deregulation Act of 1978, 49 U.S.C. § 41713(b)(1), and even if Plaintiff's claim is not deemed to be preempted, her Complaint fails to state a claim upon which relief may be granted.

Fed. R. Civ. P. 12(b)(6) authorizes the court to dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted. . . ." In deciding a motion brought under Rule 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true. *League of United Latin American Citizens v. Bredesen,* 500 F.3d 523,527 (6th Cir. 2007). Yet, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Moreover, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

4

need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct 1955, 1964-65 (2007) (internal quotation marks, alteration, and citations omitted). Rather, to withstand a motion to dismiss, the complaint's factual allegations, accepted as true, "must be enough to raise a right to relief above the speculative level," and to "state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 555, 570, 127 S. Ct at 1965, 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S. Ct. at 1949. The plausibility standard, however, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Where a complaint pleads facts that are 'merely consistent with' a defendant' liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). Applying the foregoing standards, the Court concludes that Defendant's Motion to Dismiss in this case should be granted.

## IV. DISCUSSION

### A. PREEMPTION UNDER THE ADA

In 1978, Congress enacted the Airline Deregulation Act (the "ADA") to deregulate the airline industry so as to promote "maximum reliance on competitive market forces," as well as "to provide efficiency, innovation, and low prices; and to decide on the variety and quality of, and determine prices for, air transportation services." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992). Congress included in the Act an express preemption provision: "A State…may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation." 49 U.S.C. § 41713(b)(1). This preemption provision was included in the Act to "ensure that the States would not undo federal deregulation with regulation of their own." *Morales*, 504 U.S at 378. *See also American Airlines v. Wolens*, 513 U.S. 219, 115 S.Ct. 817 (1995).

In *Morales,* the Supreme Court construed the words "relating to" contained in the preemption clause as "express[ing] a broad pre-emptive purpose." *Morales*, 504 U.S. at 383. To be "related to" under the ADA's preemption provision, a state law must simply have "a connection with, or reference to, airline 'rates, routes, or services.'" *Id.* at 384. At the same time, however, the Court also warned that some state actions may affect airlines in "too tenuous, remote, or peripheral a manner to be preempted." *Id.* at 390.

The scope of the preemption provision has been the subject of debate in the federal courts, particularly with respect to state law labor-related claims. The conflict in the

circuits primarily relates to the interpretation of the word "service" within the preemption provision. *Compare, e.g., Air Transp. Ass'n of Am. v. Cuomo*, 520 F.3d 218, 222 (2d Cir.2008) (per curiam) (defining "service" for purposes of the preemption clause to "encompass[ ] matters such as boarding procedures, baggage handling, and food and drink—matters incidental to and distinct from the actual transportation of passengers"), with *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1261 (9th Cir.1998) (en banc) (defining "service" as "the prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail" but not "an airline's provision of in-flight beverages, personal assistance to passengers, the handling of luggage, and similar amenities"). *See also Gary v. Air Group, Inc.*, 397 F.3d 183 (3d Cir. 2005) (holding that the ADA did not preempt a former copilot's state-law claims arising out of reports to his superiors of potential safety violations because he reported the safety violations before flights were scheduled and therefore could not have interrupted "service"); *Branche v. Airtran Airways, Inc*., 342 F.3d 1248 (11th Cir. 2003) (holding that the ADA did not preempt the plaintiff's retaliatory discharge claim based on his reporting of airline safety violation because plaintiff's claim was fundamentally an employment discrimination claim that did not implicate any arena in which airlines competed, and, as such, did not "relate to service of air carrier").

    Defendant in the instant action seeks to dismiss Plaintiff's wrongful discharge claim on the basis of federal preemption under the ADA, arguing that her complaints with respect to Spirit's understaffing "clearly relate[] to Spirit's services," and therefore,

are, preempted. However, there is insufficient factual predicate in the parties' pleadings for the Court to make a determination of the preemption issue. As the above-cited cases demonstrate, more than a generalized allegation of "understaffing" is needed to determine whether the complaints Plaintiff's claim of discharge in violation of public policy is predicated sufficiently relate to Spirit's "services" or whether they would affect the airline in a too tenuous or peripheral manner to warrant preemption.

However, the Court need not resolve the preemption issue at this time as it finds, for the reasons that follow, that neither of the claims alleged in Plaintiff's Complaint states a cognizable claim upon which relief may be granted.

**B.**     **PLAINTIFF'S MICHIGAN PUBLIC POLICY CLAIM**

In Count I of her Complaint, Plaintiff alleges that she "was discharged for her objections to and refusal to violate the law in the course of her employment," and "[a]ccordingly, [her] discharge was in violation of public policy." [Complaint, ¶¶ 37-38.] Michigan courts have provided as a general rule that "where there exists a statute explicitly proscribing a particular adverse employment action, that statute is the exclusive remedy, and no other public policy claim for wrongful discharge can be maintained." *Kimmelman v. Heather Downs Mgmt. Ltd.*, 278 Mich. App. 569, 573, 753 N.W.2d 265, 268 (2008). Therefore, "[a] public policy claim is sustainable… only where there is not an applicable statutory prohibition against discharge in retaliation for the conduct at issue." *Dudewicz v. Norris-Schmid, Inc.*, 443 Mich. 68, 80, 503 N.W.2d 645, 650 (1993) *disapproved on other grounds by Brown v. Mayor of Detroit*, 478 Mich. 589, 734 N.W.2d

514 (2007). Here, both state and federal law provide an applicable statutory prohibition against discharge in retaliation for the conduct upon which Plaintiff's Count I is predicated.

In 1999, Congress amended the Airline Deregulation Act to add the Whistleblower Protection Program (the "WPP"). 49 U.S.C. § 42121. The WPP makes available a cause of action for employees who have been terminated for providing their "employer or the Federal Government information relating to any violation or alleged violation of any order, regulation, or standard of the Federal Aviation Administration or any other provision of Federal law relating to air carrier safety… or any other law of the United States." 49 U.S.C. § 42121(a)(1). The statutory form of relief provided by the WPP is clearly intended to address exactly the harm of which Plaintiff complains in this action. *See e.g., Botz v. Omni Air International*, 286 F.3d 1248 (8th Cir. 2002) (holding that the WPP was the plaintiff's exclusive remedy for her claim that she was terminated for refusing to accept a flight assignment that she believed violated federal airline safety regulations and for reporting the alleged violation to her employer); *Tucker v .Hamilton Sundstrand Corp.,* 268 F. Supp. 2d 1360 (S.D. Fla. 2003) (holding that the WPP provided the plaintiff's exclusive remedy for his claim that he was terminated for complaining that his employer did not have proper written procedures for certain operations that impacted air safety and could result in an interruption of the service of an aircraft).

In addition to the Federal WPP, Michigan's Whistleblower Protection Act (the "WPA") makes it unlawful for an employer to "discharge, threaten, or otherwise

9

discriminate against an employee … because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States…" M.C.L. § 15.362. As such, the WPA "is designed to protect employees who report suspected wrongdoing by their employer to a higher authority from retaliatory discharge." *Dickenson v. Oakland University*, 171 Mich. App. 68, 429 N.W.2d 640 (1988). Therefore, this provision arguably also provides Plaintiff with a form of relief for the alleged retaliation by Spirit Airlines.

Because the ADA's Whistleblower Protection Program and Michigan's Whistleblower Protection Act afford Plaintiff a remedy for the actions of which she complains, her Count I common law claim of retaliatory discharge in violation of public policy must be dismissed as a matter of law.

### C. PLAINTIFF'S RETALIATION CLAIM UNDER MICHIGAN'S ELLIOTT-LARSEN CIVIL RIGHTS ACT

In Count II, Plaintiff alleges a claim of retaliation under the Michigan Elliott-Larsen Civil Rights Act (the "ELCRA"). The ELCRA prohibits discrimination based upon religion, race, color, national origin, age, sex, height, weight and marital status. M.C.L. § 37.2202(1), and also prohibits retaliation or discrimination "against a person because the person has opposed a violation of this act, or because the person has made a

charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under the act." M.C.L. § 37.2701(a).

To establish retaliation under the ELCRA, the plaintiff must establish: (1) that she opposed violations of the ELCRA or participated in activities protected by the act, and (2) that the opposition or participation was a "significant factor" in the adverse employment decision. *Booker v Brown & Williamson Tobacco Co*., 879 F.2d 1304, 1310 (6th Cir. 1989). For the protected activity engaged in by a plaintiff to be considered a "significant factor," the plaintiff must show that it was one of the reasons motivating the adverse treatment. *See Polk v Yellow Freight Systems, Inc*., 876 F.2d 527, 531 (6th Cir. 1989). The mere fact that adverse treatment follows the employee's protected act, however, is in and of itself insufficient to establish retaliation under the ELCRA. *Booker, supra* at 1314.

Plaintiff's ELCRA retaliation claim in this case is predicated on her July 2010 complaint to Spirit's Director of Inflight Services Kim Archambeau about personal relationships and favoritism resulting therefrom that existed in the workforce. She claims that her termination four months later was due, in part, to her opposition to conduct that she perceived to violate the ELCRA. To withstand dismissal under *Iqbal* and *Twombly,* however, Plaintiff had to have pled facts that would make such an allegation plausible. Here, Plaintiff merely states, in a conclusory fashion, that she made complaints of "sexual harassment, hostile work environment, and unfair treatment." She provides no factual background supporting any alleged wrongdoing committed by Spirit management other

**11**

than her accusation that "personal relationships" and "favoritism" resulting therefrom existed in the workplace. She has alleged no facts that would show that such "personal relationships" or "favoritism" amounted to sexual harassment, created a hostile work environment, or otherwise demonstrated prohibited discrimination under the ELCRA.

In her Response Brief, Plaintiff argues that reporting what she believed was unlawful favoritism due to the personal relationships between certain managerial and lower level staff members is sufficient to give rise to retaliation claim under the ELCRA. In support, she relies upon a California state court decision construing California law. She cites no Michigan state or federal decisions in support of her contention. This is not surprising as Michigan courts have repeatedly held that favoritism based on personal relationships – which is all that Plaintiff here alleges to have complained of – is *not* covered under the Elliott-Larsen Act. *See e.g., Barrett v. Kirtland Comm. College*, 245 Mich. App. 306, 319, 628 N.W.2d 63 (2001) (the ELCRA only covers conduct "requiring an employee to submit to sexually based harassment as a condition of employment or discrimination based on gender, *not discrimination based on sexual affiliations or relationships." Id.* (emphasis added)); *see also Corley v. Detroit Bd. Of Educ.,*470 Mich. 274, 279, 681 N.W.2d 342 (2004) ("actionable sexual harassment requires conduct or communication that *inherently* pertains to sex.")

Furthermore, Plaintiff merely summarily concludes that a causal connection exists between her complaint about personal relationships and her termination, but offers no facts in support of this claim; the four-month time span between the time Plaintiff

**12**

allegedly made her complaint about the personal relationships and the termination of her employment in and of itself, is insufficient to establish the requisite causal nexus. *See Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000). Thus, her ELCRA retaliation claim in Count II must also be dismissed.

### D.     AMENDMENT WOULD BE FUTILE

Although it is this Court's general practice to provide a plaintiff with an opportunity to amend his or her complaint when faced with a dismissal that is readily curable because slight defects should not condemn an otherwise viable complaint, this practice need not be followed here because amendment of Plaintiff's Complaint would be futile. *See, e.g., Rose v. Hartford Underwriters Ins. Co*., 203 F.3d 417, 420-21 (6th Cir. 2000). It would be futile to grant leave for Plaintiff to amend to add a claim under the Michigan Whistleblower's Protection Act or the Federal WPP, as such a claim would be time-barred. A complaint alleging a violation of the WPA must be filed "within 90 days after the occurrence of the alleged violation of th[e] act." M.C.L. § 15.363(1). Similarly, adding a claim under the Federal WPP would be futile as it, likewise, would be time-barred. Though the Federal WPP does not contain a separate statute of limitations, the Supreme Court has directed that when that is the case, courts are to "apply the most closely analogous statute of limitations under state law." *See DelCostello v. Teamsters*, 462 U.S. 151, 158, 103 S.Ct. 2281, 2287 (1983); *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 147, 107 S.Ct. 2759, 2762 (1987) (noting that the Rules of Decision Act usually requires that a state statute be borrowed, and also that "[g]iven our

longstanding practice of borrowing state law, and the congressional awareness of this practice, we can generally assume that Congress intends by its silence that we borrow state law"). As Michigan's WPA is the most analagous statute, its 90-day period of limitations would also govern a Federal WPP claim.

Moreover, although Plaintiff submitted a lengthy response to Defendant's motion, she only cursorily requested that, in lieu of dismissal, the Court permit her to amend her complaint; she did not hint at any additional facts she would incorporate in an amended complaint that would cure her deficiencies. Accordingly, this Court declines to provide Plaintiff with an opportunity to amend. *See, e.g., Lewis v. Wheatley*, 528 F. App'x 466, 469-70 (6th Cir. 2013) (amendment is futile when, among other things, a plaintiff does not "provide[] any additional factual allegations that [she] would submit in an amended complaint").

### E.	THE CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS ARE DISMISSED FOR FAILURE TO PROSECUTE

Plaintiff was issued summonses for service of process upon the individual defendants when she filed her complaint in state court on March 6, 2013 but she never served any of the individual defendants before those summonses expired on June 5, 2013. Therefore, on June 5, 2013, with the concurrence of the only served defendant, Spirit Airlines, Inc., Plaintiff sought and obtained from this Court an order for the issuance of new summonses for the individual defendants. However, yet again, Plaintiff failed to serve the individual defendants and the federal summonses have now also expired.

Plaintiff having failed to serve any of the individual defendants after having been afforded more than eight months to do so, Plaintiff's claims against the individual defendants will be dismissed pursuant to Fed. R. Civ. P. 4(m) and 41, and Eastern District of Michigan Local Rule 41.2 for failure to prosecute.

## CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss is GRANTED, and Plaintiff's claims against Defendant Spirit Airlines, Inc. are hereby DISMISSED, with prejudice.

IT IS FURTHER ORDERED that, pursuant to Fed. R. Civ. P. 4(m) and 41, and Eastern District of Michigan Local Rule 41.2, Plaintiff' claims against individual Defendants Gregory Manny, Brian Davis, Michael Anderson, Tony Lefevbre, and Kim Archambeau are DISMISSED for failure to prosecute.

Let Judgment be entered accordingly.


Dated: January 22, 2014    s/Gerald E. Rosen
              GERALD E. ROSEN
              CHIEF, U.S. DISTRICT COURT


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, January 22, 2014, by electronic and/or ordinary mail.

              s/Julie Owens
              Case Manager, 313-234-5135